UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN J. DELACRUZ,

      Petitioner,

      v.                                    Case No. 05-C-0664

JUDY SMITH, Warden,
Oshkosh Correctional Institution,

      Respondent.

**DECISION AND ORDER ON HABEAS PETITION**

**I. PROCEDURAL BACKGROUND**

The petitioner, John Delacruz ("Delacruz"), filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 following his conviction and sentence in the Milwaukee County Circuit Court for three counts of armed robbery with threat of force, two of which were enhanced because Delacruz concealed his identity. Delacruz was sentenced to ten (10) years on each count, to run concurrently, and ten (10) years of extended supervision on each count, to also run concurrently. On January 5, 2004, Delacruz filed a motion for postconviction relief in the circuit court seeking a new trial and alleging that he was denied the effective assistance of counsel.

On January 6, 2004, the circuit court denied Delacruz's postconviction motion without an evidentiary hearing. Delacruz appealed both his conviction and the circuit court's order denying his postconviction motion. In a decision dated February 8, 2005, the Wisconsin Court of Appeals affirmed Delacruz's conviction and the circuit court's order denying Delacruz's motion for postconviction relief. Delacruz's petition for review in the Wisconsin Supreme Court was denied

on April 6, 2005, and Delacruz did not file a petition for certiorari in the United States Supreme Court. Delacruz thereafter filed his federal habeas petition on June 21, 2005.

Delacruz's habeas petition initially raised four claims. However, after being directed by the court to address the exhaustion question with regard to three of the four claims, Delacruz stated in his "Traverse to Answer" that he would not proceed on the unexhausted claims and only proceed on the ineffective assistance of counsel claim. Thereafter, on August 8, 2005, the court issued a briefing schedule on Delacruz's habeas petition. In accordance with that briefing schedule the parties have filed their respective briefs. Thus, Delacruz's habeas corpus petition is now fully briefed and is ready for resolution.

## II. FACTUAL BACKGROUND

At his jury trial, Delacruz took the stand and admitted committing the armed robberies with which he was charged during the early morning hours of November 24, 2002. (Answer, Ex. H, at 30.) Delacruz argued that the jury should find him innocent, however, based upon the affirmative defense of coercion pursuant to Wis. Stat. § 939.46. Delacruz testified that during the early morning hours of November 24, 2002, Fernando Velasquez ("Velasquez") and Moises Berrios ("Berrios") came to his apartment and accused him of stealing drugs from their boss, Alejandro Cruz ("Cruz"). Velasquez and Berrios were armed and told Delacruz that if he did not leave with them they would hurt Delacruz's girlfriend, Sarah Cole ("Cole"), who was present in the apartment at the time. Velasquez and Berrios took Delacruz to a car, and while Eric Cleveland ("Cleveland") drove, Delacruz was punched in the face, elbowed in the mouth, and had two teeth knocked out. (Answer, Ex. H, at 35.) Cleveland drove Velasquez, Berrios, and Delacruz to Cleveland's house, where Cruz

2

was. When they arrived at Cleveland's house, Cruz came out of the house and repeatedly punched Delacruz and demanded to know where the safe containing the drugs and money was.

Then Cleveland drove Delacruz, Berrios, and Cruz around. While Cleveland was driving, Delacruz was hit and was told that if he did not come up with the money somehow he was going to die. (Answer, Ex. H, at 39.) Cruz told Delacruz that he would have to come up with the money to cover the safe or he would rape and kill Delacruz's girlfriend, Cole, and kill Delacruz's children if he had to. (Answer, Ex. H. at 39-40.) Cleveland then drove Delacruz, Berrios, and Cruz back to Delacruz's apartment so he could pick up Cole's car. Once at Delacruz's apartment, Cleveland left, and Berrios went into the apartment with Delacruz, while Cruz waited outside. Delacruz took the keys to Cole's car and told her to call the police and report the car stolen. Cruz then drove Delacruz and Berrios to Berrios's home. At Berrios's home, Cruz and Berrios tortured Delacruz by hitting him and burning him with cigarettes on his chest, inner thigh, and scrotum. (Answer, Ex. H, at 45.) This continued until Berrios's sister came home and told them to leave. Then Cruz and Berrios drove Delacruz around and told him that he was going to do some robberies. Delacruz agreed to do the armed robberies because Cruz and Berrios threatened to kill him and harm his girlfriend and children.

On cross-examination, Delacruz testified that in October of 2002, he burglarized a property in order to pay a drug debt. Delacruz also testified that drug dealers had used the threat of force toward him if he did not pay the drug debt. Delacruz accepted his actions for the burglary and pled guilty. Cole, Delacruz's girlfriend, also took the stand at his jury trial and corroborated what took place at their apartment during the early morning hours of November 22, 2004. Specifically, Cole testified that two men came to the apartment and pointed a gun at Delacruz's chest, and kept asking him where the money and the safe was. Cole also testified that when Delacruz returned with Berrios,

3

Delacruz was beaten up and Delacruz passed her a note that said "report your car stolen, they're going to kill me." Cole did in fact report her car stolen. (Answer, Ex. H. at 96.)

The jury rejected the coercion defense and found Delacruz guilty on all counts. Before Delacruz's sentencing, trial counsel submitted portions of the discovery including the statements Cruz, Velasquez, and Berrios made to the police "for consideration at sentencing." (Answer, Ex. D. at 7.)

On January 4, 2004, Delacruz filed a postconviction motion for a new trial based on the ineffective assistance of trial counsel. In his postconviction motion, Delacruz argued that his trial counsel should have subpoenaed Cruz, Velasquez, Berrios, and a neighbor, only identified by the name of "Carlos," as witnesses for the defense and that trial counsel's failure to do so denied Delacruz the effective assistance of counsel. In support for this argument, Delacruz attached copies of the police interviews of Cruz, Velasquez, and Berrios, "for the purpose of showing that Cruz was the owner of the safe who, along with two others, confronted the upstairs neighbor, Carlos, by waving a gun around, and punched [Delacruz]; and that Velasquez . . . forcibly removed [Delacruz] from his home." (Answer, Ex. B. "Decision and Order Den. Mot. for Postconviction Relief" at 2.) On January 5, 2004, the trial court denied Delacruz's motion for a new trial without an evidentiary hearing.

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus for a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Furthermore, federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court

proceedings unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision results in an "unreasonable application" of clearly established federal law when the state court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Moreover, "[a] rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

Delacruz argues that his trial counsel was ineffective because he did not subpoena (1) Alejandro Cruz, (2) Fernando Velasquez, (3) Moises Berrios, (4) Tasha Garcia, (5) Eric Cleveland,

5

and (6) a neighbor by the name of Carlos as witnesses at his trial.[1] (Pet'r's Br. in Support of Habeas Corpus [hereinafter "Pet'r's Br."] at 7.) Specifically, Delacruz argues that:

> [t]here was other evidence available and known to defense counsel at the time of trial that could corroborate the defendant's version of events. Alejandro Cruz, Fernando Velasquez, and Moises Berrios made some valuable admissions to the police that could have been used at trial. Likewise, the upstairs neighbor, Carlos, was also victimized by the same men. His testimony regarding the search of his home would have assisted the defense in that the jury would be able to see the kind of threat the defendant was facing.
>
> . . . The fact that the aforementioned witnesses would probably testify that it was the defendant's idea to commit the robberies and deny that they coerced him, is not fatal to the defense.
>
> It is not surprising that they would claim that the robberies were the defendant's idea. It is also not surprising that they would not admit that they coerced him. If they were called as witnesses, defense counsel could have examined them in light of the admissions that they did make to police and later argue their credibility to the jury. There was really nothing to lose and everything to gain by calling these witnesses.

(Pet'r's Br. at 10-11.)

Delacruz argues that if Cruz had been called to testify, he would have been expected to testify consistent with his statement to the police which includes admissions that he: (1) was the owner of

---

[1] In his brief, Delacruz argues that his trial counsel was ineffective for failing to call Eric Cleveland and Tasha Garcia as witnesses at his trial. (Pet'r's Br. at 9.) However, there is no indication that Delacruz ever raised this argument in the state courts, and he did not argue it in his brief before the Wisconsin Court of Appeals. (Answer, Ex. D at 7-8.) Delacruz has therefore not exhausted his state court remedies with regard to this claim as required by 28 U.S.C. § 2254(b)(1). Moreover, at this point Delacruz has most likely defaulted any state court claim he may have had regarding these two potential witnesses. *See State v. Lo*, 665 N.W.2d 756, 760, 264 Wis.2d 1, 9 (Wis. 2003) ("[C]laims of error that could have been raised on direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 motion, absent a showing of a sufficient reason."); *State v. Escalona-Naranjo*, 517 N.W.2d 157, 162-64, 185 Wis.2d 168, 181-85 (Wis. 1994). This court, therefore, will not reach the merits of Delacruz's arguments with respect to the testimony of Tasha Garcia and Eric Cleveland because they have not been properly preserved.

a safe that contained money, cocaine, and weapons; (2) along with two other armed individuals confronted the neighbor upstairs, Carlos, concerning the missing safe; and (3) assaulted Delacruz. (Pet'r's Br. at 8.) Similarly, if Berrios had been called to testify, he would have been expected to testify consistent with his statement to the police which includes admissions that he: (1) was present when the upstairs neighbor [Carlos] was confronted at gunpoint; (2) forcibly removed Delacruz from his home to "continue the conversation"; (3) removed the phone receiver so Sarah Cole could not call the police; and (4) saw Cruz assault Delacruz. (Pet'r's Br. at 8.) If Velasquez had been called to testify, he likewise would have been expected to testify that he not only saw Cruz and Berrios assault Delacruz but that he also assaulted Delacruz. (Pet'r's Br. at 8.) Finally, Delacruz believes that if Carlos, the upstairs neighbor, had been called he would have testified regarding how Berrios and Velasquez searched his home for the safe and assaulted him as well. (Pet'r's Br. at 8.)

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

7

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard the Supreme Court in *Strickland* clearly stated:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

The Wisconsin Court of Appeals identified the correct constitutional standard to apply when assessing Delacruz's ineffective assistance of counsel claim.

> . . . The [circuit] court noted that police reports of the crimes included statements from Berrios, Velasquez, and Cruz about their knowledge and participation in Delacruz's armed robberies. The circuit court determined that their proffered testimony, if consistent with their statements to police, would not have supported Delacruz's coercion defense. The circuit court concluded, therefore, there was no reasonable probability that their testimony would have caused a different result at trial. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

(Answer, Ex. B. "Court of Appeals Decision" at 2.) The circuit court also identified the correct constitutional standard to apply when assessing the ineffective assistance of counsel claim.

> *Strickland v. Washington*, 466 U.S. 668, 694 (1984), sets forth a two-part test for determining whether an attorney's actions constitute ineffective assistance: deficient performance and prejudice to the defendant. Under the second prong, the defendant is required to show "'that there is a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence

8

in the outcome. A court need not consider whether counsel's performance was
deficient if the matter can be resolved on the ground of lack of prejudice.

(Answer, Ex. B. "Decision & Order Den. Mot. for Postconviction Relief" at 2.) (citations omitted)

The standard identified by the court of appeals and the circuit court is the same standard set forth in *Strickland*. This court, then, must determine whether the court of appeals'[2] application of the *Strickland* standard was unreasonable. That is to say, in order for habeas relief to be granted, the court of appeals' decision must be "more than incorrect or erroneous," it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

The court of appeals rejected Delacruz's argument that his trial counsel was ineffective for not subpoenaing Cruz, Berrios, Velasquez, and Carlos to testify at trial. The court reasoned that even if Cruz, Berrios, and Velasquez had testified consistently with the statements they gave to the police, there was not "a reasonable probability [that] the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694.

> There was no dispute that Cruz believed the defendant had stolen his safe and that a confrontation with the defendant had occurred. The dispute lay with the coercion that was purportedly applied. A review of the police reports reveals that Cruz wasn't even present when the defendant was confronted. When he was ultimately in the car with the defendant, he stated that he was "falling in and out of sleep" and was told when he awoke that the defendant was doing a robbery. Cruz said he did not get any money out of the robbery. The statement of Velasquez mentions nothing about coercing the defendant to perform a robbery. Velasquez said he stayed in the car when [Berrios] talked with [Delacruz] inside. Velasquez said he had nothing to do with the robberies. The statement of Berrios simply says that they "escorted" [Delacruz] out to the car. When they went back to get [Delacruz's] car, the two phone receivers were taken, but [Berrios] says nothing about a gun being displayed – he says only that one person had a black 9 mm semiautomatic handgun

---

[2] Because the court of appeals decision adopts the circuit court's memorandum decision as its own opinion on the case, I will simply refer to both the decision of the circuit court and the court of appeals as the court of appeals' decision. (*See* Answer, Ex. B. "Court of Appeals Decision" at 2-3.)

9

concealed in his jacket pocket. [Berrios] stated that it was [Delacruz] who brought up the issue of robbing different places and that he was encouraged to do so by the others. Such testimony would not have been consistent with the defendant's theory of defense.

The court finds that any testimony from these participants, insofar as their statements to police are concerned, does not establish a reasonable probability of a different result at trial. The defendant's testimony, and that of his girlfriend, was compelling. However, the jurors heard how he had once previously committed a crime based on the same claim: coercion. The jurors were free to reject his contentions. Absent an affidavit from the proposed witnesses that they forced the defendant to commit the armed robberies to pay back what was thought owing for the stolen safe, the court finds that trial counsel was not ineffective for failing to subpoena these persons.

(Answer, Ex. B. "Decision & Order Den. Mot. for Postconviction Relief" at 2-3.)

This determination was not an unreasonable application of *Strickland*. Counsel's failure to subpoena witnesses who could have corroborated some facts of the case, but whose testimony could have also significantly weakened the defense's theory of the case, does not "undermine confidence in the outcome" of Delacruz's trial. Simply stated, the court of appeals concluded that the testimony of Cruz, Velasquez, and Berrios would not have created a reasonable probability of a different outcome at trial because, while their testimony may have corroborated some of the facts of the case, their testimony could have also significantly undermined Delacruz's own testimony and the defense's theory of the case: that is, that Cruz, Velasquez, and Berrios coerced the defendant into committing the armed robberies.

This is because in their statements to the police (which Delcaruz relied upon to indicate what they would testify to if subpoenaed) Cruz, Velasquez, and Berrios all either stated that Delacruz was the one who brought up the idea of robbing different places or that they had nothing to do with the armed robberies. Accordingly, the court of appeals concluded that "[a]bsent an affidavit from the

10

proposed witnesses that they forced the defendant to commit the armed robberies to pay back what was thought owing for the stolen safe, the court finds that trial counsel was not ineffective for failing to subpoena these persons." (Answer, Ex. B. "Decision & Order Den. Mot. for Postconviction Relief" at 3.) Delacruz argues that the state, in its brief before the court of appeals, "claimed that the proffered testimony of Cruz, Velasquez, and Berrios ' . . . inculpated the defendant while at the same time it completely exculpated the defendant.'" (Pet'r's Br. at 12.) Regardless of whether the state's brief contained this misstatement, it is clear that the proffered testimony of Cruz, Velasquez, and Berrios would not have completely exculpated the defendant, as none of the statements made any mention of forcing Delacruz to perform the armed robberies.

Delacruz was required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different." *Strickland*, 466 U.S. at 694. I cannot say that the court of appeals' determination that he failed to do so is unreasonable. Furthermore, it was not necessary for the court of appeals to assess whether Delacruz's counsel was deficient for not subpoenaing Cruz, Velasquez, Berrios, and Carlos because, even if Delacruz's counsel was deficient in failing to do so, it did not prejudice Delacruz, and thus, relief was not warranted. In sum, the court of appeals' determination that Delacruz failed to establish that he suffered prejudice under *Strickland* was not unreasonable. Delacruz is not entitled to habeas relief based on the claimed ineffective assistance of his trial counsel.

Delacruz also requests that this court order an evidentiary hearing on his ineffective assistance of counsel claim. Pursuant to 28 U.S.C. § 2254(e)(2), this court

> shall not hold an evidentiary hearing on the claim unless the applicant shows that (A) the claim relies on (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a

11

factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Delacruz has not shown that his ineffective assistance of counsel claim "relies on a new rule of constitutional law"; nor has he shown that his claim relies upon "a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* Indeed, in his habeas brief, Delacruz makes the same factual and legal arguments that he made to the circuit court and to the court of appeals. Moreover, even if Delacruz's ineffective assistance of counsel claim relied upon "new" facts, for example, if Delacruz obtained affidavits from Cruz, Berrios, Velasquez, and Carlos, this court would still not be permitted to conduct an evidentiary hearing because those "new" facts could have been previously discovered through the exercise of due diligence.

Simply stated, in order to be granted an evidentiary hearing, Delacruz is required to demonstrate that his ineffective assistance of counsel claim either relied on a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence. Delacruz has failed to do so and for this reason alone the court will not grant an evidentiary hearing.

## V. CONCLUSION AND ORDER

For all of the aforementioned reasons, Delacruz has not demonstrated that he is entitled to habeas relief on the ground that he was denied the effective assistance of counsel. Nor has he demonstrated that he is entitled to an evidentiary hearing in this court. Thus, Delacruz's petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the petitioner's petition for writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 5th day of April 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge